IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-HC-2044-FL

TINDRICK ZEIGLER,                          )
                                           )
                Petitioner,                )
                                           )
        v.                                 )          ORDER
                                           )
JUSTIN ANDREWS,                            )
                                           )
                Respondent.                )

Petitioner, a federal prisoner proceeding pro se, petitions this court for a writ of habeas

corpus pursuant to 28 U.S.C. § 2241. The matter is before the court on the parties' responses to the

court's August 27, 2018, order, which stayed this matter pending the United States Court of Appeals

for the Fourth Circuit's decision in Mangum v. Hallembaek, 910 F.3d 770 (4th Cir. 2018). The

matter also is before the court on respondent's motion to dismiss, or in the alternative, for summary

judgment (DE 10),[1] and petitioner's motion to expedite and compel (DE 22). For the reasons that

follow, the court lifts the stay, grants respondent's motion for summary judgment, and denies as

moot petitioner's motion.

**BACKGROUND**

On October 12, 2006, federal authorities indicted petitioner in the Eastern District of New

York on one count of possession with intent to distribute 50 grams or more of cocaine base, in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii). United States v. Zeigler, No. 2:06-CR-680-

SJF-AKT (E.D.N.Y. Oct. 12, 2006). On May 16, 2007, the United States District Court for the

---

[1]        Because the parties have attached matters that are outside of the pleadings, respondent's motion will
be construed as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Eastern District of New York ("Eastern District of New York") entered order setting conditions of pretrial release. Id. (May 16, 2007). On August 13, 2009, New York authorities arrested petitioner and charged him with criminal possession a weapon and resisting arrest. (Clarke Decl. (DE 13-1) ¶ 4).[2] Following the arrest, petitioner remained in primary state custody awaiting trial on the state charges. (See id. ¶¶ 4-5). On September 1, 2009, petitioner was temporarily transferred to federal custody, pursuant to a writ of habeas corpus ad prosequendum, for hearing on revocation of pretrial release. United States v. Zeigler, No. 2:06-CR-680-SJF-AKT (E.D.N.Y. Sept. 1, 2009). The Eastern District of New York revoked conditional release and ordered petitioner detained pending trial on his federal charges. Id. Federal authorities then returned petitioner to primary state custody. (Clarke Decl. (DE 13-1) ¶ 5).

On an unidentified date, federal authorities filed superseding information charging petitioner with conspiracy to distribute and possess with intent to distribute at least 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(iii). United States v. Zeigler, No. 2:06-CR-680-SJF-AKT (E.D.N.Y. Aug. 8, 2010). Petitioner pleaded guilty to this offense. Id. On July 26, 2010, state authorities transferred petitioner to temporary federal custody, pursuant to a writ of habeas corpus ad prosequendum, for his sentencing. Id. The Eastern District of New York sentenced petitioner to 144 months' imprisonment and five years' supervised release. Id. At sentencing, the Eastern District of New York did not indicate whether petitioner's federal sentence should run concurrent or consecutive to petitioner's anticipated state sentence. Id.; (see also Clarke Decl. (DE 13-1) ¶ 6). Federal authorities then returned petitioner to primary state custody, where

---

[2]     Frankland Clarke ("Clarke") submitted a declaration in support of respondent's motion for summary judgment. Clarke is employed by the Federal Bureau of Prisons ("BOP") as an operations manager in the designation and sentence computation center. (Clarke Decl. (DE 13-1) ¶ 1.)

his state criminal charges remained pending, and filed the federal judgment as a detainer. (Clarke Decl. (DE 13-1) ¶ 7). On September 16, 2010, a New York state court sentenced petitioner to five years' imprisonment for criminal possession of a weapon, second degree, and ordered the state sentence to run concurrent to the federal sentence. (Id. ¶ 8).

On October 11, 2011, petitioner requested that the BOP designate, nunc pro tunc, his state prison as the place of imprisonment for his federal sentence, which effectively would credit the time he served in state custody towards his federal sentence. (Id. ¶ 11). On December 13, 2011, the BOP completed a "Factors Under 18 U.S.C. [§] 3621(b) Worksheet." (Id. ¶¶ 11-12; Factors Worksheet (DE 13-5)). Under the first factor, "nature and circumstances of the offense," the BOP noted petitioner had been sentenced to a term of five years' imprisonment in New York state court for criminal possession of a weapon, and his current federal sentence was 144 months' imprisonment. (Factors Worksheet (DE 13-5)). Under "history and characteristics of the prisoner" the BOP noted that petitioner had not incurred any disciplinary infractions in BOP custody, but that his criminal history included the following: 1) 1996 conviction for distributing heroin and cocaine; 2) 2001 conviction for criminal facilitation; and 3) 2006 conviction for sale of a controlled substance. (Id.). Under the factor "any statement by the court that imposed the sentence" the BOP noted it had contacted the federal sentencing judge, who stated she did not intend petitioner's federal sentence to run concurrent to his state sentence. (Id.). The BOP denied the request for nunc pro tunc designation based on these factors, noting the federal sentencing judge "considered all factors to include state charges when determining term in effect." (Id.).

Petitioner remained in primary state custody in service of the state sentence until November 13, 2013. (Id. ¶ 9). At that time, state authorities transferred petitioner to the primary jurisdiction

of the federal government. (Id.).

After his transfer to federal custody, the BOP prepared petitioner's federal sentence computation. (Id. ¶ 10). The BOP determined petitioner's federal sentence commenced on November 21, 2013, the date petitioner completed his state sentence and was transferred to federal custody. (Id.). Petitioner's anticipated release date, after application of good time credits, is May 4, 2024. (Id.). Under the BOP's sentence computation, petitioner's federal and state sentences do not run concurrently. (See id.).

Petitioner appealed the BOP's decision denying his request for nunc pro tunc designation through the BOP's administrative remedy procedure, but the BOP rejected all of petitioner's appeals. (Clarke Decl. (DE 13-1) ¶ 14). Petitioner has exhausted his BOP administrative appeals. (Id.).

On February 27, 2017, petitioner filed the instant petition for a writ of habeas corpus, alleging the BOP abused its discretion by denying his nunc pro tunc request. On December 22, 2017, respondent filed the instant motion for summary judgment, which was fully briefed. On August 27, 2018, the court entered order staying this action pending the Fourth Circuit's decision in Mangum v. Hallembaek, 910 F.3d 770 (4th Cir. 2018). The Fourth Circuit decided Mangum on December 12, 2018, and, following issuance of the mandate, the parties filed supplemental briefing addressing Mangum. On September 20, 2019, petitioner filed the instant motion to expedite and compel.

**DISCUSSION**

A.      Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v.

Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must then affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.      Analysis

Pursuant to § 2241, a federal court may issue a writ of habeas corpus to a federal or state prisoner if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). "[A]ttacks on the execution of a [federal] sentence are properly raised in a § 2241 petition." In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (en banc). A federal prisoner challenges the execution of his sentence when he contests, as here, the BOP's "administrative rules, decisions, and procedures applied to his sentence." In re Wright, 826 F.3d 774, 777 (4th Cir. 2016).

1.      BOP's Authority to Designate an Inmate's Place of Imprisonment

As noted, petitioner alleges the BOP abused its discretion by denying his request to designate, nunc pro tunc, his state prison as the place of imprisonment for his federal sentence. Under 18 U.S.C. § 3621(b), the BOP may "designate any available penal or correctional facility that meets minimum standards of health and habitability [regardless of] whether [the facility is] maintained by the Federal Government or otherwise . . ., that [the BOP] determines to be appropriate and suitable." The BOP must weigh five factors in making this determination:

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence–
      (A) concerning the purposes for which the sentence to imprisonment was
          determined to be warranted; or
      (B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to
section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). The First Step Act of 2018 amended § 3621(b) by adding, among other

provisions not relevant here, the following: "[n]otwithstanding any other provision of law, a

designation of a place of imprisonment under this subsection is not reviewable by any court." 18

U.S.C. § 3621(b), amended by First Step Act of 2018, Pub. L. No. 115-391, § 601, 132 Stat. 5194,

5237.

Pursuant to § 3621(b), the BOP has authority to designate, nunc pro tunc, a state facility for

service of a federal sentence. See Mangum v. Hallembaek, 824 F.3d 98, 101 (4th Cir. 2016)

("Mangum I"); Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990). Where the inmate is subject to

both federal and state sentences, the BOP's nunc pro tun designation can have the effect of running

his federal and state sentences concurrently. See Mangum I, 824 F.3d at 101.

2.      Jurisdiction

Respondent argues the First Step Act's amendments to § 3621(b) deprive the court of

jurisdiction to review petitioner's claim. As noted, § 601 of the First Step Act amended § 3621(b)

by adding provision that the BOP's designation of a federal inmate's place of imprisonment is "not

reviewable by any court." 18 U.S.C. § 3621(b), amended by First Step Act of 2018, Pub. L. No.

115-391, § 601, 132 Stat. at 5237.

The First Step Act was enacted on December 21, 2018, over a year after petitioner filed the

instant petition. Accordingly, to succeed on his jurisdictional challenge, respondent must show that

the amendments to § 3621(b) apply retroactively to cases filed before its enactment. See Ward v.

Dixie Nat. Life Ins. Co., 595 F.3d 164, 172-75 (4th Cir. 2010) (discussing presumption against

statutory retroactivity). Respondent has made no attempt to do so. Nevertheless, because

respondent frames this as a jurisdictional argument, the court briefly addresses whether the First

Step Act's amendments to § 3621(b) apply retroactively.

"[F]ederal . . . courts employ a robust presumption against statutory retroactivity" which

requires "courts [to] assume that statutes operate prospectively only, to govern future conduct and

claims, and do not operate retroactively, to reach conduct and claims arising before the statute's

enactment." See id. (citing Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994)). To determine

whether a statute applies retroactively, the court engages in the following three-step analysis:

> First, a court must "determine whether [the legislature] has expressly prescribed the
> statute's proper reach." If so, "there is no need to resort to judicial default rules,"
> and hence, the presumption against retroactivity does not apply. If, however, the
> legislature has not prescribed the statute's reach, a court must move to step two and
> "determine whether the new statute would have a retroactive effect" if applied to the
> case at hand. If not, the presumption against retroactivity again has no application,
> but if it does, the presumption is triggered, and the court must then inquire under the
> third step whether the presumption is overcome with "clear congressional intent" in
> favor of retroactivity.

Id. (quoting Landgraf, 511 U.S. at 280).

Under the first step, Congress "may avoid triggering the presumption against retroactivity

by including an explicit provision stating that the statute governs lawsuits already initiated prior to

its enactment." Ward, 595 F.3d at 172; see also Martin v. Hadix, 527 U.S. 343, 354 (1999). Here,

§ 601 of the First Step Act does not include an express provision stating the amendments to

§ 3621(b) will govern habeas petitions filed prior to enactment.

Under step two, the court considers whether the statute would have retroactive effect if it applied to this habeas action. Ward, 595 F.3d at 173. "A statute operates retroactively when it would attach new legal consequences to events occurring prior to its enactment." Id.; see also Landgraf v. USI Film Prods, 511 U.S. 244, 280 (1994). Here, petitioner filed the instant habeas petition in 2017. Under respondent's interpretation of the statute,[3] the amendments to § 3621(b) preclude petitioner from seeking federal habeas review of the BOP's nunc pro tunc designation. Prior to enactment of the First Step Act, federal inmates could obtain habeas review of the BOP's nunc pro tunc designations in federal court. See, e.g., Mangum I, 824 F.3d at 103. Accordingly, the statute has retroactive effect in this case because it "takes away or impairs vested rights acquired under existing laws . . . ." Landgraf, 511 U.S. at 269; see I.N.S. v. St. Cyr, 533 U.S. 289, 321-22 (2001).

Finally, in order to overcome the presumption against retroactivity, Congress must "clearly demonstrate" its intent for the law to apply retroactively. Ward, 595 F.3d at 174. To satisfy this standard, "the words used [in the statute must be] so clear, strong, and imperative that no other meaning can be annexed to them, or . . . the intention of the legislature [must be such that it] cannot be otherwise satisfied." U.S. Fid. & Guar. Co. v. United States, 209 U.S. 306, 313, 314 (1908); Ward, 595 F.3d at 174. The court finds nothing in Section 601 of the First Step Act suggesting Congress intended these amendments to apply retroactively. Indeed, where Congress made other portions of the First Step Act retroactive, see Pub. L. No. 115-391, § 404, 132 Stat. at 5222, the absence of a retroactivity provision in the § 3621(b) amendments suggests Congress did not intend that they apply retroactively. See Martin, 527 U.S. at 354 (noting statute mus provide "unambiguous

_____

[3]     The court expresses no opinion on whether respondent's interpretation of § 3621(b) is correct.

directive" to establish Congress intended retroactivity).

In sum, the court finds the First Step Act's amendments to § 3621(b) do not apply retroactively to deprive the court of jurisdiction over petitioner's claims  The court therefore proceeds to the merits.

3.      Merits

Petitioner argues that the Fourth Circuit's decisions in <u>Mangum I</u> and <u>Mangum II</u> compel the BOP to give substantial weight to the state court's order that his state sentence run concurrent to his federal sentence, and thus the BOP abused its discretion by failing to consider the state court's order.  In <u>Mangum I</u>, the Fourth Circuit considered a habeas petitioner's challenge to the BOP's denial of a nunc pro tunc request.  824 F.3d at 99.  Similar to petitioner, the <u>Mangum I</u> petitioner was in primary state custody awaiting arraignment and sentencing on state criminal charges when the federal court imposed judgment.  <u>Id.</u> at 99-100.  The federal judgment was silent as to the whether the federal sentence should run concurrent or consecutive to his anticipated state sentence. <u>Id.</u> at 100.  After the <u>Mangum</u> petitioner's federal sentencing, the state court sentenced him and ordered the sentence to run concurrently to the federal sentence.  <u>Id.</u>  However, when the <u>Mangum</u> petitioner arrived in federal custody, the BOP rejected his request to designate, nunc pro tunc, the state prison as his federal place of imprisonment, thereby determining that his state and federal sentences must run consecutively. <u>Id.</u> at 100-01.  Petitioner sought habeas relief pursuant to § 2241, but this court initially denied relief.  <u>Id.</u> at 101.

On appeal, the Fourth Circuit concluded the BOP erred in its consideration of the § 3621(b) factors.  As relevant here, the Fourth reasoned that

> [a]t the time Mangum was sentenced in the North Carolina federal court in May
> 2007, a federal district judge in this circuit was powerless to impose a federal

sentence to be served consecutively to a state sentence that had not yet been imposed. See United States v. Smith, 472 F.3d 222, 225 (4th Cir. 2006) ("The plain language of [§ 3584(a)] does not grant a district court authority to order that its sentence run consecutively to a future sentence."), abrogated in part by Setser [v. United States, 566 U.S. 231 (2012)], as stated in United States v. Obey, 790 F.3d 545, 549 (4th Cir. 2015). To be sure, Setser later resolved a circuit split in holding that, under § 3584(a), a district court "has authority to order that the federal sentence be consecutive to an anticipated state sentence that has not yet been imposed," see [566 U.S. at 233]. Nonetheless, we are confident that any definition of an arbitrary and capricious determination by an administrative agency such as the BOP would include within it the agency's invocation of a presumed intention on the part of a federal sentencing judge to do that which he was powerless to do under binding circuit precedent at the time he imposed a sentence. In this case, one might reasonably expect the BOP to exercise its discretion to weigh heavily what the state judge did say rather than what the federal judge did not and could not say.

Id. at 102–03. The Fourth Circuit remanded the case to this court, with instructions to return the matter to the BOP to "fully evaluate all relevant factors under 18 U.S.C. § 3621(b) in a fashion consistent with the views expressed in this opinion. Id. at 103.

After remand, the BOP again denied the Mangum petitioner's request, relying on the federal sentencing judge's statement that he would not have ordered the federal sentence to run concurrently to the anticipated state sentence. Mangum v. Hallembaek, 910 F.3d 770, 774-75 (4th Cir. 2018) ("Mangum II"). The Mangum petitioner then filed a motion to compel in his closed habeas action this court, seeking an order directing the BOP to comply with the Mangum I mandate, which the court denied. Id. at 775. The Mangum petitioner appealed the court's order denying the motion to compel. Id.

In Mangum II, the Fourth Circuit reversed, holding the BOP failed "to evaluate the relevant factors under § 3261(b) in a manner consistent with our mandate." Id. at 776. In particular, the Fourth Circuit explained Mangum I established the federal sentencing court's views were "legally irrelevant" under binding circuit precedent at the time and thus the BOP was not free to give the

federal court's sentencing views more weight than the state court's expressed desire for concurrent sentences. Id. at 777-78. In other words, "[u]nder our mandate [in Mangum I] the sate court's statement was entitled as a matter of law to receive more weight than the federal court's views under binding circuit precedent at the time." Id. at 778.

The Fourth Circuit noted, however, that the BOP is not ordinarily bound by the state court's sentencing order when analyzing a § 3621(b) nunc pro tunc request. Id. The Mangum petitioner's case was unique because the federal sentencing court's views had to be "excluded from the analysis" and "the BOP's factors worksheet on its face provide[d] little indication of what factors would justify overriding the state court's preference and denying [the Mangum petitioner's] request . . . ." Id.

The instant case is distinguishable from Mangum I and Mangum II because here the BOP obtained a "legally relevant" statement from the federal sentencing judge confirming that she intended the federal sentence to run consecutive to the state sentence. (Factors Worksheet (DE 13-5); see also United States v. Zeigler, No. 2:06-CR-680-SJF-AKT (E.D.N.Y. Dec. 14, 2016) (transcript of telephonic conference). Petitioner was sentenced in the Eastern District of New York, which is in the Second Circuit. At the time the BOP solicited the sentencing judge's views, the United States Court of Appeals for the Second Circuit had concluded, unlike the Fourth Circuit where the Mangum petitioner was sentenced, that the federal sentencing court has discretion to run a federal sentence consecutive to an anticipated state sentence. See Salley v. United States, 786 F.2d 546, 547 (2d Cir. 1986). Accordingly, the federal sentencing court's views were not "legally irrelevant" in this case, and the BOP therefore was free to give more weight to the federal sentencing court's expressed intent than the state court's order. See Mangum II, 910 F.3d at 778.

The BOP also appropriately exercised its discretion by considering all relevant factors under § 3621(b), as reflected on the Factors Worksheet. (See DE 13-5); Trowell v. Beeler, 135 F. App'x 590, 596 (4th Cir. 2005). While it is true the Factors Worksheet does not expressly reference the state court's order running the state sentence concurrent to the federal sentence, the "worksheet on its face provides . . . indication of what factors would justify overriding the state court's preference" for concurrent sentences – the federal sentencing court's (legally relevant) intent that the federal and state sentences run consecutively. Mangum II, 824 F.3d at 100; cf. Setser, 566 U.S. at 238 (explaining the BOP "is not free to use its 'place of imprisonment' authority to achieve a different result" than the federal sentencing court's stated intention). Furthermore, petitioner alerted the BOP to the state court's judgment in his correspondence requesting nunc pro tunc designation. (See DE 13-4). The BOP therefore was aware that the state court imposed a concurrent sentence when it completed the Factors Worksheet. In these circumstances, the court cannot say the BOP abused its "broad discretion" under § 3621(b) when it denied petitioner's nunc pro tunc request. Trowell, 135 F. App'x at 595.

Accordingly, the court grants respondent's motion for summary judgment. The court also denies as moot petitioner's motion to expedite and compel.

4.      Certificate of Appealability

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court determines that reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong, and none of the issues deserve encouragement to proceed further. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003). The court therefore denies a certificate of appealability.

## CONCLUSION

Based on the foregoing, the court GRANTS respondent's motion for summary judgment (DE 10), DENIES as moot petitioner's motion to expedite and compel (DE 22), and DENIES a certificate of appealability. The clerk is DIRECTED to lift the stay, and close this case.

SO ORDERED, this the 23rd day of September, 2019.

LOUISE W. FLANAGAN
United States District Judge